# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | ) **2:25-CR-00233-CLM-GMB** |
| | ) |
| | ) |
| **EDDIE JERRY JONES** *et. al.*, | ) |

### UNITED STATES' BRIEF IN SUPPORT OF DETENTION

The United States hereby files this brief regarding the detention of the defendants LaNicholas Rollins; Juan Miguel Nation; Juan Pierre Nation; Demetrius Preyer; Devante McKinney; and Sammuel Gulley.

On April 23, 2025, the Grand Jury for the Northern District of Alabama returned a 59-count indictment against fourteen defendants, to include the seven defendants listed above, who are pending a detention hearing before this Court on May 15, 2025.   The defendants are charged with Conspiracy to Distribute Methamphetamine, Fentanyl, Cocaine, Heroin, and Marijuana in violation of Title 21, United States Code, Sections 846 and 841.  Additionally, defendants LaNicholas Rollins and Devante McKinney have been charged with Distribution of Cocaine in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C).  Devante McKinney was also charged with Use and Carry of a Firearm During and in Relation to a Drug Trafficking Crime in violation of Title 18, United States Code, Section

924(c). Defendant Demetrius Preyer was charged with Possession with Intent to Distribute Cocaine in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C). Lastly, the defendants are facing numerous counts of Use of Communication Facility to Commit a Drug Trafficking Crime in violation of Title 21, United States Code, Section 843(b).

## I.    The defendants' detention is appropriate under Title 18, United States Code, Section 3142.

On April 29, 2025, defendants LaNicholas Rollins, Juan Miguel Nation, Juan Pierre Nation, Demetrius Preyer, Devante McKinney, and Sammuel Gulley had their initial appearance before this Court, subsequent to their arrests. At these defendants' initial appearance and arraignment, the United States moved for detention pursuant to 18 U.S.C. § 3142 and the defendants motioned for a detention hearing.

### A. There is a rebuttable presumption in favor of detention.

Under 18 U.S.C. § 3142(e) and (f), a rebuttable presumption that there are no conditions that will reasonably assure the appearance of the defendant or the safety of the community arises when the defendant is facing an offense for which the maximum term of imprisonment is ten years or more as prescribed in the Controlled Substances Act. Here, the presumption arises for these seven defendants. "Once the statutory presumptions are raised, the defendant carries the burden of production to come forward with evidence to rebut the presumptions. The defendant's obligation to come forward with evidence does not shift to the defendant the

2

government's burden of persuasion." *United States v. Quartermaine*, 913 F.2d 910, 916 (11th Cir. 1990) (citing *United States v. King*, 849 F.2d 485, 488 (11th Cir. 1988).

"A grand jury indictment provides the probable cause required by the statute to trigger the presumption." *Quartermaine* at 916. Given the charges in the indictment, the presumption is triggered. "The presumption becomes evidence to be considered along with other evidence listed in the Act as indicative of risk of flight or danger to the community." *Id.* This is not to argue that these defendants, because they are facing drug trafficking crimes, should automatically be detained. But rather, the fact that the defendants have been charged by the Grand Jury with drug trafficking, as well as defendant McKinney being charged with a firearm offense, should be considered as evidence in favor of detention.

**B.  The factors set forth in Title 18 United States Code, Section 3142(g) favor detention.**

The United States must show risk of flight by a preponderance of the evidence and danger to the community by clear and convincing evidence, which includes danger to any individual, witness, or victim. *Quartermaine* at 917 (see also *United States v. King*, 849 F.2d, 485, 489 n. 3 (11th Cir. 1988). Under the Bail Reform Act, the Court takes account of the following factors when considering detention: (1) the nature and circumstances of the offense charged; (2) the weight of evidence against the person; (3) the history and characteristics of the person; (4) the nature and

seriousness of the danger to any person or the community. 18 U.S.C. § 3142(g). This analysis requires a fact-based determination as to each defendant.

The nature and circumstances of drug trafficking favor detention. As the Supreme Court Justices have noted, as well as other Circuit Courts of Appeal have noted, drug trafficking is a serious and dangerous offense. *See Rummel v. Estelle*, 445 U.S. 263, 296 n.12, (1980) (Powell, J., dissenting) and *Harmelin v. Michigan*, 501 U.S. 957, 1003 (1991) (Kennedy, J. concurring) ("studies…demonstrate a direct nexus between illegal drugs and crimes of violence."); *see also United States v. Stone,* 608 F.3d 939, 945 n.6 (6th Cir. 2010) ("To be sure, drug trafficking is a serious offense that, in itself, poses a danger to the community") and *United States v. Terrebone*, 820 F.2d 156, 157-58 (5th Cir. 1987) ("The drug seller, at every level of distribution, is at the root of the pervasive cycle of destructive drug abuse…the foul hand of the drug dealer blights life after life and, like the vampire of fable, creates others in its owner's evil image – others who create others still, across our land and down generations, sparing not even the unborn.").

## II.    The defendants' involvement and participation in a dangerous drug trafficking and violent organization demonstrates their danger to the community.

Eddie Jones, Larry Rollins Jr., and Marcus Johnson are leaders of a criminal organization that, in addition to promoting drug trafficking and money laundering, uses violence to enforce their will and promote fear. For example, conversations

were intercepted on the wire where individuals in this organization were attempting to identify state homicide detectives and making threatening comments about the detectives.

One of this organization's primary enforcers for violence and homicides is Damien McDaniel, a man charged with numerous homicides in Jefferson County. This is evidenced on wire interceptions during the investigation of this case. On January 7, 2025, Damien McDaniel, Larry Rollins, Jr., and others had state bond hearings in Jefferson County Court. In intercepted calls, Jones contacted an individual and told him that he wanted to identify the detectives and that once he identified the detectives, "It's over with."  Based on the history of this organization, agents believed that Jones' statement that "It's over with" once he identified the detective on the case constituted a threat. Immediately following the interception of that call, safety measures were followed to protect the identity of witnesses.

On February 25, 2025, in call session 2464, Jones and Damian McDaniel spoke about McDaniel being charged with several state homicides. They also discussed how McDaniel and Larry Rollins Jr. was a person of interest in a homicide where a firefighter was shot to death but they were not certain how McDaniel was a suspect because the firearms used in the homicide were hidden. McDaniel and Jones

had a discussion of the software Cellebrite[1] and how the police might be searching messages using this service. They discussed whether certain individuals were cooperating with law enforcement. They talked about how the "feds" indicted Zachary Holmes, and how it was possible that Larry Rollins Jr. had not been charged federally with the heroin he possessed. Jones commented that Larry Rollins Jr. could still be indicted federally. Lastly, they discussed the evidence surrounding the mass shooting at Hush Lounge in Birmingham in September 2024, and McDaniel stated that the police may have his DNA from that shooting.

The defendants facing detention hearings before this Court are not only affiliated with Eddie Jones, Larry Rollins Jr., Marcus Johnson, and Damien McDaniel, but are co-defendants and co-conspirators of dangerous criminal activity, i.e. drug trafficking, which poses a serious risk of danger to the community that cannot be overcome by any conditions of release.

### III.   The evidence against each defendant favors detention.

The United States intends on offering evidence in favor of detention as to these defendants at the scheduled detention hearing, but also offers the following evidence below. *United States v. Gaviria*, 828 F.2d 667, 669 (11th Cir. 1987) (holding "the government as well as the defense may proceed by proffering evidence

---

[1] Cellebrite is a digital forensics company used by law enforcement to analyze digital devices, including cellphones.

subject to the discretion of the judicial officer presiding at the detention hearing.")
Examining each defendant, considering the rebuttable presumption, and applying
the 3142(g) factors favors detention as to each defendant.

### 1. Defendant LaNicholas Rollins

*History and Characteristics*

LaNicholas Rollins is the brother of Larry Rollins and a key figure in the drug
trafficking conspiracy. He maintains close relationships with the leaders of the
organization and works on their behalf to distribute narcotics, as discussed below.
LaNicholas Rollins is not employed. However, agents seized a Chevrolet Impala
upon arresting LaNicholas Rollins, which is subject to forfeiture in the Indictment,
and, notably, titled in LaNicholas Rollins' name.

*Involvement in Conspiracy*

As described below, LaNicholas Rollins distributed cocaine to Devante
McKinney in July 2024, and McKinney admitted that Rollins had distributed cocaine
to him on a number of occasions. LaNicholas Rollins spoke to Eddie Jones numerous
times on the wire and was also referenced by other defendants at several points on
the wire. In a call described below between Eddie Jones and Sammuel Gulley, Jones
told Gulley to make sure that "Nick" got a vacuum sealer for whatever was being
transported in the bag.  In call session 103, Jones called LaNicholas Rollins to tell
an unknown person to call him. Jones said, "I know you (LaNicholas Rollins)

goddamn laid up, you don't wanna make no money so tell [unknown male name] to call me." Jones then asked Rollins if he wanted to meet "playboy" to "get these clothes." Rollins replied, "Some clothes?" and Jones said, "Yeah, some invoices." Rollins said he was going to let the other individual do it and make some money. Jones said he knew it wasn't even enough money for Rollins to do it himself and Rollins agreed. In call session 310, Jones called an individual and told him that "Nick" (LaNicholas Rollins) was about to "bring that paper over to you in a minute." On February 8, 2025, in call session 1222, Jones and Lanicholas Rollins had a call where Rollins repeatedly asked Jones if he got "the things." Jones said that he forgot them.

On February 24, 2025, in call session 2431, Jones and an individual had a three-way conversation with Damien McDaniel, in which LaNicholas Rollins also intermittently participated. McDaniel asked LaNicholas Rollins how "your boy doing" (Larry Denzel Rollins), as Larry Rollins was incarcerated on state capital murder charges. LaNicholas Rollins said he was "Gucci." LaNicholas Rollins told McDaniel that Larry wasn't snitching. McDaniel agreed and then said, "Petey" (Nyquan Lollar) was in the video "from the, from the Waffle House. He's on video, getting on of the fucking car. You can see this n**** plain as day. You don't see nobody else face but his…how the fuck you get hit. How the fuck you get hit with one and you get hit with eleven." They discussed whether another individual might

be talking to law enforcement.

Over the course of the wire interceptions, Jones was intercepted on numerous occasions coordinating with Cordero Reid (a charged co-defendant) to smuggle drugs into Kilby Correctional Facility, where Reid and McDaniel were housed. In one call, Jones and Reid shared who they would be sending to a meeting to exchange narcotics, and Jones said that his person would be coming after "seeing his brother at the county," leading agents to believe that it was LaNicholas Rollins who would meet with Reid's courier after seeing his brother Larry.

When agents conducted search warrants at several locations used by Jones and the drug trafficking organization in March 2025, they recovered a loaded pistol in the master bedroom nightstand that was purchased by LaNicholas Rollins in November 2020. Jones has a felony murder conviction and is prohibited from purchasing or possessing firearms.

### *Circumstances of Arrest*

On April 29, 2025, LaNicholas Rollins was arrested on the federal indictment. Upon executing the warrant, agents observed a stolen firearm in his residence in plain view and obtained a state search warrant for his residence. During that subsequent search, agents found approximately nine firearms, four cell phones, assorted ammunition, and bulk currency.

### 2. Defendant Juan Miguel Nation

*History and Characteristics*

Juan Miguel Nation is an integral member of the conspiracy and a right-hand man for its leaders. For example, extractions of cellular phones used by Damien McDaniel, an enforcer for the drug trafficking organization charged in this case, reveal that Nation and McDaniel were in regular communication. On July 7, 2024, McDaniel texted Nation what appears to be an order for specific calibers of firearms or ammunition: "762 223/556 300 black out 40 & 9." On July 9, 2024, Nation texted McDaniel, "got the bullet" and McDaniel responded, "U got all of em." Nation acknowledged, "ya", then "230." McDaniel asked Nation to send him a picture and Nation told him to FaceTime him. On July 14, 2024, McDaniel texted Nation, "10 boxes of 223 but I want the green tios [tips] or the best ones they got 3 boxes of 300 black out best ones they got & 3 boxes of 7.62." Nation responded, "he ain't answer may be tm." Later, Nation followed up, "got like 35-40 223 green tip." McDaniel asked what he meant and then clarified, "That's wat he got?" after following up with, "Don't forget them bullets." Nation confirmed, "bet I gotcha."

On October 5, 2024, McDaniel texted Nation and said, "get them straps [guns] take'em down dear house wit the car." This text was within days of the mass shooting at Hush Lounge on September 21, 2024, and another homicide on

September 22, 2024, and McDaniel is currently facing state capital murder charges on both of these events.

<u>*Selected Wiretap Communications*</u>

Juan Miguel Nation was repeatedly intercepted over the wire conversing with Eddie Jones about narcotics trafficking. Law enforcement also observed Nation during surveillance conducting activities on Jones' behalf, including picking up money from customers.  For example, in call session 1504,[2] Jones made a call to Juan Miguel Nation and said he was "finna get 5 zips" and said, "Boss we gotta make some money, man, we ain't made no money today." On February 13, 2025, in call session 1717,[3] Jones called Juan Miguel Nation and asked if he had "pass[ed] that off today." Nation replied, "I talked to em, they ain't came and got it yet tho…I'm waiting for em to come get it. I'm finna call em now." Jones said, "Yeah, I need a read on that for I get it."[4] In call session 2029,[5] Jones received a call from Juan Miguel Nation, in which Nation asked him to open up the garage. Jones agreed to do so. Subsequent calls with "Punkin," a customer of this organization, corresponding with pole camera footage, confirmed for agents that Nation was the

---

[2] COUNT TWENTY-EIGHT.
[3] COUNT THIRTY-FIVE.
[4] Agents believe based on the context of other calls in which Jones was trying to assess the quality of fentanyl and his provision of samples before purchasing larger quantities, that Jones was instructing Nation to give a sample to someone and find out what they thought before he got more.
[5] COUNT THIRTY-NINE.

one delivering narcotics to "Punkin" and then bringing back the proceeds to Jones. This is illustrated by the call (call session 2031)[6] to "Punkin" immediately following Nation pulling up and calling Jones to open the garage, in which Jones advised "Punkin" that he was "short." They discussed how "Punkin" could pay Jones despite Jones' CashApp account having been shut down for sending money to individuals in prison.

On February 19, 2025, in call session 2169,[7] Jones called Juan Miguel Nation. During this call, Marcus Johnson was observed on camera meeting with Nation at the "trap house" at 920 7th Street. Nation stated, "He just pulled up. You want me to give it to him?" Jones said, "Yeah, give it to him and tell him I said uh, I am fixing to pull up to give him uh, to give him the cigarettes." Jones later tells Nation to tell "him if he gone make the play, then make the play and pull right back up." In call session 2170,[8] Nation called Jones while meeting with Johnson. Nation asked Jones, "That's all you want me to do?" and Jones replied, "Nah, I'm finna pull up…what he say he bout to do, he finna go make the play or what he gonna do?" Nation said, "He said he waiting on you." Jones said, "Okay, I'm finna pull up." After the call ended, Nation was observed on camera retrieving a gift bag from his vehicle and

---

[6] COUNT FORTY.
[7] COUNT FORTY-TWO.
[8] COUNT FORTY-THREE.

handing the bag into the passenger window of Johnson's vehicle to Johnson. A few minutes later, Jones arrived at 920 7th Street.  Nation then retrieved a large black trash bag from his vehicle and placed it in the passenger window of Johnson's vehicle. Johnson placed the bag in the backseat. On February 23, 2025, in call session 2401,[9] Jones and Juan Miguel Nation spoke. Nation said, "he gave me the $1400. He said he gonna come get the other one in the morning." Jones replied, "Tomorrow? So he ain't never get that?" Nation said, "No, he don't want the big yet, said he'll come in the morning." Jones said, "Okay, see that good as long as we got that money." Jones then took a call on his other phone while still on the phone with Nation, discussing the deal with the customer that Nation had just delivered narcotics to. Jones said to the customer, "I thought you wanted the big, I thought you wanted the big." The call then dropped.

## *Circumstances of Arrest*

On April 29, 2025, Nation was arrested on the federal indictment in this case. Upon his arrest, agents identified contraband in plain view and obtained a state search warrant for his residence at Cedarbrook Circle. Pursuant to that warrant, agents found the following:

- Over 2.6 kilograms of suspected cocaine

---

[9] COUNT FORTY-NINE.

- Multiple firearms, magazines, and ammunition

- Suspected marijuana

- Assorted drug packaging

- A money counter

### 3. Defendant Juan Pierre Nation

*History and Characteristics*

Juan Pierre Nation is an integral member of the drug trafficking organization, who has close ties to its leaders.  For example, Larry Rollins Jr. was in possession of and frequently observed driving a Silverado truck that is registered to Juan Pierre Nation. Larry Rollins Jr was in this vehicle with heroin and a firearm at the time of his arrest in October 2024.

*Conduct in this Indictment*

Over the course of the wire interceptions, Juan Pierre Nation was in regular communication with Eddie Jones. For example, in call session 1242,[10] Jones had a call with Juan Pierre Nation in which Jones said, "P, where you at?". "P" responded that he was over by the car wash, and Jones replied, "I need you to meet me down low with a t-shirt (cocaine)."[11] Nation agreed to meet him. In call session 2843,[12]

---

[10] COUNT TWENTY-THREE.

[11] Agents know from training and experience that a "t-shirt" refers to a kilogram of cocaine. On more than one occasion, Nation was asked by Jones to deliver a "t-shirt."

[12] COUNT FIFTY-SIX.

Jones received a call from Juan Pierre Nation, who said he needed an old "BG," and Jones clarified, "A big?". Nation said, "Yeah." Jones said, "Alright, let me call Miguel to get it to you, I'll call you right back."

<u>*Circumstances of Arrest*</u>

In addition to posing a danger to the community due to his close affiliation with and work on behalf of this violent drug trafficking organization, Nation also poses a risk of flight due to the circumstances of his arrest. The evidence will show that as deputies of the United States Marshals Service (USMS) approached Nation to arrest him at the golf course where he works, Nation first began to run and then ultimately got into a golf cart and attempted to flee in the golf cart. Once another USMS vehicle came out of a wooded area and gained speed on Nation, he got out of the golf cart and surrendered.

## 4. Defendant Demetrius Preyer

<u>*History and Characteristics*</u>

Demetrius Preyer has a lengthy criminal history of violent charges, including a conviction for Assault, First Degree involving Preyer shooting Marcus Johnson (a charged co-defendant) with a pistol and burning him with lighter fluid and alcohol. Preyer also has prior federal convictions for gun and drug offenses in the Northern District of Alabama, case number cr-02-J-0514-S. Preyer was granted early

termination of his supervised release, which otherwise would have ended in May 2024.

Preyer claims employment at Atkins and Goolsby, which purportedly began after the events that took place in this case in January 2025. Over the course of the investigation, agents have learned that Atkins and Goolsby is "run" by Eddie Jones and David Jones' mother. Other members of the drug trafficking organization are "employed" by the organization.

### Conduct in this Indictment

In call session 466,[13] Jones called Demetrius Preyer and stated, "I'm trying to see if we can goddamn go to the skating rink [methamphetamine]…I'm waiting on my dude now." Preyer said, "Yeah you already know I'm sweating." Jones said, "When I get off the phone with him, I'm fixing to meet him and then shit once I meet him I'll let you know you can just meet me down low. I got another one of them things for you too." In call session 508,[14] Jones called Preyer and told him, "I'm finna let the dogs out and take these trash cans stuff in and then you can meet me in the hood." Based on their prior conversations, agents believed that Jones and Preyer were about to meet to engage in a drug transaction, so they set up surveillance accordingly. At approximately 9:48 p.m., agents observed Jones' Chevrolet Malibu

---

[13] COUNT EIGHTEEN.
[14] COUNT NINETEEN.

backed into the driveway of 920 7th Street. Agents also observed that Jones was sitting in the driver's seat. At 9:48 p.m., a Chevrolet Avalanche parked on the roadway in front of the residence. At 9:49 p.m., Preyer placed an outgoing text message to Jones. As this text message was being sent, agents observed the driver of the Avalanche holding a cellular phone leading agents to believe that this was Preyer. Shortly after this text message was sent, Jones flashed the headlights of the Malibu. At 9:52 p.m., Preyer got out of his car and into Jones' car. At 10:14 p.m., Preyer got out of the Malibu and back into the driver's seat of the Avalanche.

Preyer left the location and agents followed Preyer until a Jefferson County Sheriff's deputy conducted a traffic stop at 1600 Tallapoosa Street in Birmingham. The deputy asked Preyer to exit the vehicle due to the distinct odor of marijuana coming from within. As the deputy began to pat Preyer down for weapons, he felt a brick like item in Preyer's right front pants pocket. Officers later discovered that this item was a plastic bag containing a white brick believed to be cocaine. Officers arrested Preyer for Trafficking Cocaine and transported him to the Jefferson County Jail. Later, agents conducted a presumptive test of the white brick and found it to be positive for cocaine. This suspected cocaine was submitted to the DEA Laboratory for testing, which confirmed that it was cocaine with a net weight of 249.4 grams.

After the traffic stop on the evening of January 15, 2025, Jones made several attempts to contact Preyer. Shortly thereafter, Jones turned off his phone. Preyer

made a jail call later that evening to an unknown individual and told that person to let "Unc" know that it was "as soon as." Agents knew Eddie Jones operated with the the nickname of "Unc" and believed that Preyer was attempting to make sure Jones knew that Preyer had been pulled over as soon as he left 920 7th Street. This is consistent with the loyalty demonstrated by members of the organization to its leaders in relaying their encounters with law enforcement.

### 5. Defendant Devante McKinney

#### *Nature and Characteristics of Defendant*

Devante McKinney has a criminal history which includes prior arrests for Attempted Murder, Shooting into an Occupied Vehicle, and Trafficking Cocaine. However, McKinney is not a convicted felon. Separately, McKinney's bond has been revoked in the related state case where he was charged with Trafficking Cocaine in August 2024.

#### *Conduct in this Indictment*

On July 29, 2024, members of the Birmingham Police Department and the DEA established surveillance at a car wash that was a known front for the Rollins brothers (Larry and LaNicholas) to distribute narcotics. LaNicholas Rollins left that location in the afternoon and traveled to 920 7th Street in Pratt City.[15] Shortly after,

---

[15] This residence on 7th Street was the subject of a federal search warrant in March 2025, which resulted in the seizure of trafficking amounts of powder cocaine,

he left 920 7th Street and traveled to the Pinson Valley Marathon gas station. Another car parked next to his, and both drivers got out of their vehicles and entered the store, leaving a short time later. The driver of the other vehicle, identified as Devante McKinney, got into LaNicholas Rollins' car and agents observed what appeared to be a hand-to-hand transaction. McKinney then got out of the vehicle and into his own vehicle. Agents followed McKinney as he left the gas station and initiated a traffic stop on his vehicle for an expired license plate. Upon approach, officers smelled marijuana coming from within the vehicle. McKinney advised that he had a Titan Tiger .39 special revolver in the glove box of his car. Officers conducted a probable cause search of his vehicle, which revealed approximately 27.9 grams of cocaine concealed in a Lay's potato chip bag under the steering wheel

Agents learned that after his encounter with law enforcement and making bond in the state, McKinney went back to LaNicholas Rollins and other members of the organization and told them about his interactions with law enforcement, which led several of them to change their phone numbers, which is reflected in the toll analysis and usage for these individuals.

---

"crack" cocaine, approximately 20 cell phones, bulk cash, and a plastic bag containing bullets.

*Circumstances of Arrest*

McKinney was arrested on April 29, 2025 on the federal indictment in this case. Pursuant to items of contraband being found in plain view, agents obtained a subsequent state search warrant for McKinney's residence at Overlook Circle. During that search, agents found several cellular devices, a bag of suspected cocaine, a box of counterfeit money, a shotgun with a magazine, and another magazine with rounds.

## 6. Defendant Sammuel Gulley

*Nature and Characteristics of Defendant*

Sammuel Gulley is currently on federal supervised release in in the Northern District of Alabama, case number 2:13-cr-140-ACA-JHE. In that case, he was convicted of Conspiracy to Possess with Intent to Distribute Controlled Substances, Possession with Intent to Distribute Controlled Substances, and Use of a Communication Device to Facilitate a Drug Trafficking Crime. Gulley was intercepted over a federal wire and ultimately found in possession of two kilograms of heroin during a traffic stop in which Gulley led officers on a high-speed chase. A subsequent search warrant at Gulley's residence revealed he was in possession of kilogram quantities of cocaine. He was sentenced in that case to 120 months in federal prison, followed by 60 months of supervised release, which commenced on August 3, 2021.

Gulley has violated his conditions of federal supervised release previously on more than one occasion and was on a court-ordered ankle monitor pursuant to those conditions of release when he was arrested on this case and found in possession of a significant amount of fentanyl and several firearms, as outlined below.

*Wiretap Interceptions*

Over the course of the wire, and while on federal supervised release, Gulley was in regular communication with Eddie Jones regarding drug trafficking activities. For example, in call session 14, Jones received a call from Samuel Gulley, and Gulley stated that he got a call from someone Jones had told him "not to fuck with" and that he had stopped interacting with that person. Jones told him he had someone else to introduce him to when he got back, and that they were "good people." Jones then told him to make sure "Nick" (LaNicholas Rollins) "got a vacuum sealer and put it in some extra vacuum sealed bag. Tell him to vacuum each one of them in an extra bag. Damn, you didn't even bring no bag or a suitcase." Gulley then said that he was just going to "put them where the spare at." Jones emphasized the importance of vacuuming "them." They then discussed making someone "stand on their word" if they wanted Gulley to keep on coming down there. In call session 124, Gulley called Jones and Jones told Gulley to "get them folks to goddamn turn in, boss what you doing?" Gulley said he had been waiting on some individuals to come over to the house. They discussed further and Jones instructed, "you can just do half and just

keep the rest."

In call session 1088,[16] Jones called Gulley and told him, "We're trying to goddamn put together, man, uh, get some of them things. Bo got them, uh, what you call them?" Gulley said, "Oh, what are you talking about?" Jones replied that he had to see what everyone was going to do and if they were good, he was going to get some. Jones said they might get "15" but he wasn't sure and he was going to see. In call session 1589,[17] Jones placed a call to Gulley in which they discussed the "light skin." Gulley said they were really talking about "both of them…they're waiting for that other one too." Jones said, "So if you had to get one which one would you get." Gulley said, "Shit bro, I'd get that….okay I got four people, that dark, a n**** already told me they were running from that. And that other one, another n**** told me they were running from that. So they were running from both of them…but that light skin." They discussed that Gulley's "people" felt that both of them were good and that it was very strong. Jones confirmed, "So the light skin and that motherfucking knockout [fentanyl]."[18] Gulley said, "Yeah that light skin…keep

---

[16] COUNT TWENTY-TWO.

[17] COUNT THIRTY-ONE.

[18] Agents know that "knockout" is a common drug term for fentanyl, particularly because of its dangerous impact on its user. This is highlighted by the context of the call in which they talking about people "running" from it and how "strong" it is. It should also be noted that before Marcus Bogus made a trip to Atlanta to pick up a sample of fentanyl as charged in the indictment, Jones was trying to recruit Gulley

coming back for that." Jones said, "Yeah I'm going to have to get some of that light skin."

## *Circumstances of Arrest*

In the week leading up to Gulley's arrest, Birmingham Police Department conducted a controlled purchase of fentanyl from Gulley. Subsequently, those agents obtained a state search warrant for his residence, which was executed simultaneously with the arrest warrant on the instant federal indictment. During the execution of that search warrant at Gulley's residence, agents found numerous firearms, eight cell phones, and approximately 265.8 grams of fentanyl. This conduct represents another violation of Gulley's supervised release.

## IV.   Conclusion

For the reasons stated herein, the United States requests that this Court order these defendants detained.

Respectfully submitted this 14th day of May 2025.

PRIM F. ESCALONA
United States Attorney

*/s/ Alan S. Kirk*
ALAN S. KIRK
ALLISON J. GARNETT
Assistant United States Attorneys

---

in other communications to go to "A" to do a pick-up (likely of the same product). However, the timing didn't work out with the supplier, despite Gulley's willingness.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CMECF system, which will send notification of such filing to all counsel of record.

*/s/ electronic signature*
ALAN S. KIRK
Assistant United States Attorney